IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 6, 2002

## MICHAEL EDMONDSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-24820    Joseph B. Dailey, Judge**

---

**No. W2002-00270-CCA-R3-PC - Filed November 20, 2002**

---

The petitioner, Michael Edmondson, appeals as of right the Shelby County Criminal Court's denial of his petition for post-conviction relief. He challenges his convictions pursuant to guilty pleas contending that he received the ineffective assistance of counsel because his trial attorney failed to investigate and prepare his case for trial. We affirm the trial court's denial of the post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Michael Edmondson.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephen P. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On the day of trial, the petitioner pled guilty to the charged offenses of two counts of especially aggravated kidnapping, a Class A felony, and one count of aggravated robbery, a Class B felony. Pursuant to the plea agreement, the trial court sentenced the petitioner as a Range I, violent offender to concurrent twenty-year terms in the Department of Correction (DOC) for the especially aggravated kidnapping convictions. It sentenced him as a Range I, standard offender to ten years in the DOC for the aggravated robbery conviction to be served consecutively to the twenty-year sentence for an effective thirty-year sentence.

The petitioner's convictions arise out of the kidnapping and robbery of Jacqueline Wilson and the kidnapping of Dedrick Freeman. At the guilty plea hearing, the state presented and the defendant stipulated to the following summary of the facts surrounding the offenses:

[O]n August 14, 1999 around 11:30 in the morning Jacquelyn Wilson was at home when two men broke in, each armed with guns, ordered her to turn over the money.

She did not know what they were referring to. They became angry, began threatening to kill her. They took her upstairs at gunpoint, forced her to [lie] on the floor and, again, repeatedly made threats to kill her. They kept asking for the money, the money, the money, and she did not know what they were talking about.

She finally found some money that she had under a mattress that she was going to use to pay for bills. She gave that to the defendants and they took jewelry off of her before they left. They went from her house to the home of Dedrick Freeman. They found Dedrick Freeman there, asked him where his brother was, asked him where the money was.

Dedrick Freeman, as Ms. Wilson, did not know what they were talking about. They took Dedrick Freeman upstairs at gunpoint along with his step-mother, Vernita Edwards . . . .

Vernita Edwards and Dedrick Freeman were forced at gunpoint through the house. Dedrick Freeman and Vernita Edwards were beaten with the guns by the defendants. The defendants left the home with Dedrick Freeman in their custody. They took him to a nearby hotel. Dallas Vanburen was driving the car.

They ordered him to stay in the hotel room and they said that they would release him once his brother gave the defendants the money that they were referring to. . . . [A]ll of the victims and witnesses in this case identified [the defendant and codefendant Louis Trigg] in photospreads.

At the post-conviction evidentiary hearing, the petitioner testified that he hired his trial attorney when he was indicted. He said that he told his attorney everything about his case and that the attorney told him the attorney was pretty sure he could win the case. He said he wanted to go to trial and did not want to plead guilty because he was not guilty. He said that he went to see his attorney at the attorney's office one to two times per month, that the meetings lasted ten to fifteen minutes, and that he last met with his attorney three weeks to one month before his trial date. He

said that he initially posted bond on the charges but that at the time of trial, he was in custody on other charges.

The petitioner testified that he and his attorney never discussed his case fully but, instead, discussed the attorney's need for more money. He said he tried to give his attorney the names and addresses of witnesses that he wanted the attorney to subpoena. He said that he asked for a copy of his file, including the statements of the witnesses and victims, but that he never got it. He said that he also called his attorney to check on his case and that his attorney would assure him that everything was all right and would ask for more money. He said that he was not happy with his attorney's performance before trial and that he told his girlfriend Latisha Jones and his sisters of his concerns. He said he did not pay his attorney because his attorney was not doing anything for his case.

The petitioner testified that his attorney did not thoroughly explain the charges to him but told him that he was facing two twenty-year terms. The petitioner testified that this was the state's initial offer and this offer did not change until the day of trial. He said that on the day of trial, his attorney told him that he could not win his case, that his codefendant was going to testify against him, and that he would get a one-hundred-five-year sentence. He said that he felt like his life was over but that he told his attorney he still wanted to go to trial. He said that he pled guilty after his attorney continued to badger him about receiving a one-hundred-five-year sentence. He said that his attorney's attitude was very aggressive that day and that his codefendant's attorney was badgering him too. He said that he asked to talk to his family, that his family members advised him to plead guilty, and that they told him that he would serve only nine and one-half years at most and less for good behavior. He said that although he wanted to go to trial, he believed that his family knew what was best for him at the time.

The petitioner testified that when he entered his guilty plea, he thought that he would serve only nine and one-half years. He said that although he signed the guilty plea forms, he did not really understand them because he had attended school only through the ninth grade. He said that he was in shock and confused when the trial court told him that he would have to serve part of his sentence at one hundred percent. He said that he was not guilty of the crimes and that he agreed to plead guilty only because his attorney told him that he could not win his case and that he would have to serve one hundred five years if he went to trial.

On cross-examination, the petitioner testified that had he went to trial, he would have proven that no crime was committed by having his attorney question the victims. He agreed that before the evidentiary hearing, he had reviewed the victims' statements about the crimes and that the victims knew him. He said he had several witnesses, including his cousins and brothers-in-law, who could have testified for him. He said that Terry Hirvery would have testified that the petitioner was not at the scene of the crimes and that Glen Hirvery would have testified that the victims told him that the petitioner did not rob them. He said Ms. Jones and his sister Anneice Edmondson would have testified that he was at home on the day of the crimes. He said he had other witnesses, but he could not recall who they were. He said that his trial attorney never asked him for the names of witnesses

and that he did not give his attorney this information because he believed it was his attorney's responsibility to defend him.

The petitioner acknowledged having prior convictions for two Class B felonies, two Class C felonies, and two Class E felonies. He said his attorney told him that when he got to the penitentiary, the twenty-year sentence and the ten-year sentence would automatically run together. He admitted that he lied to the trial court at the submission hearing when he said that no one was forcing him to plead guilty and that he did not have any questions or complaints about his attorney's representation.

Latisha Jones testified that she was the petitioner's girlfriend and that she had spoken with the petitioner's trial attorney about the facts of the petitioner's case. She said she went with the petitioner to his attorney's office once or twice and sat outside during the meetings, which lasted twenty to twenty-five minutes. She said that the petitioner went to other meetings with his attorney without her. She said that on the day that the petitioner pled guilty, his attorney told her that the petitioner would serve nine and one-half to ten years and that he would get out early with good behavior. She said that she did not tell the attorney that the petitioner wanted to go to trial and that the petitioner told her that he did not want to go to trial.

Agnes Edmondson, the petitioner's younger sister, testified that on the day of trial, the petitioner's attorney told her that he could get the petitioner ten- and twenty-year sentences that would run together. She said the attorney told her that the petitioner would serve nine to ten years or less on good behavior. She said the attorney said the petitioner would have to serve one hundred five years if convicted at trial. She said she told the petitioner that he would serve only nine and one-half to ten years if he pled guilty and advised him to plead guilty because of this. She agreed that the petitioner did not want to go to trial because he was facing a one-hundred-five-year sentence.

Anneice Edmondson, the petitioner's older sister, testified that on the day of trial, the petitioner's attorney told her that she needed to encourage the petitioner to plead guilty and accept a twenty-year sentence and a ten-year sentence that would run concurrently. She said the attorney told her that the petitioner would serve nine years or less on good behavior. She said that the petitioner wanted to go to trial but that the attorney assured her that if the petitioner went to trial, he would get a one-hundred-five-year sentence. She said she saw no alternative to the guilty plea.

The petitioner's trial attorney testified that the petitioner retained him and that he received discovery, which he believed was "open-file," from the state. He said that he met with the petitioner at his office and that they went over the discovery. He said no one was with the petitioner at this meeting. He said he met with the petitioner twice by August 2000 when the petitioner's trial date was scheduled for the following February. He said he sent the petitioner a series of letters informing him of the trial date and requesting that they meet to discuss possible defenses and trial strategy. He said the petitioner would call him to schedule meetings but then would not show up for the meetings. He said the petitioner failed to attend meetings on November 30, 2000; December 15, 2000; and January 5, 2001. He said that he made copies of discovery materials for the petitioner but that the

petitioner never returned to his office to get them. He said that he learned that the petitioner was in custody in mid to late January 2001 and that he immediately began preparing for trial.

The petitioner's trial attorney testified that the discovery from the state included statements from the victims, Jacqueline Wilson and Dedrick Freeman, at least one of whom claimed to have known the petitioner before the crimes. He said the victims had also identified the petitioner from photograph arrays. He said the victims' statements, if believed, revealed that the petitioner was guilty of the charged offenses. He said that the petitioner explained to him what had happened on the day of the offenses and that the attorney was not aware of an available defense. He said the petitioner never gave him a list of witnesses or any information that would have provided a defense to the charged crimes.

The attorney acknowledged he did not file any pretrial motions in the petitioner's case. He said he saw no basis for moving for a change of venue or the suppression of the petitioner's statement to the police. He admitted that he did not file a Rule 609, Tenn. R. Evid., motion to exclude the petitioner's prior convictions but said that if the case had gone to trial, he would have asked the trial court to consider the admissibility of the prior convictions under Rule 609. He said he believed the petitioner was aware of the fact that he had no defense before the trial date. He said he advised the petitioner not to testify at trial.

The attorney testified that both before and on the day of trial, he told the petitioner that if convicted, he was facing a maximum sentence of over one hundred years as a Range II offender. He said that when the state provided the discovery packet, it made a plea offer involving a forty-year sentence. He said that other than discussing the petitioner's case with the prosecutor during court appearances, he did not conduct additional negotiations with the state. He said he did not believe any reason existed to appeal the state's offer to a higher ranking prosecutor. He said he spoke with the attorney of the petitioner's codefendant at court appearances and on the day of trial. He said he learned that the codefendant had accepted a plea offer and would testify against the petitioner at trial. He said he believed the codefendant's testimony would significantly hurt the petitioner's case. He said the second codefendant had absconded.

The attorney testified that on the day of trial, the prosecutor agreed to offer consecutive twenty- and ten-year sentences for an effective thirty-year sentence. He said that he was prepared for trial but that he recommended that the petitioner plead guilty. He said he explained the petitioner's exposure and the state's reduced offer to the petitioner's family. He said that he did not tell the petitioner's family that the petitioner would have to serve the sentences for especially aggravated kidnapping at one hundred percent, a fact he subsequently learned from the prosecutor. He said he initially told the petitioner that he would serve all of his sentences at thirty percent. The attorney went over the paperwork with the petitioner after the petitioner talked with his girlfriend and two sisters. He said that at that time, he told the petitioner that he would have to serve the twenty-year sentences for especially aggravated kidnapping at one hundred percent. He said that the petitioner had wanted to go to trial but that after talking to his family, the petitioner felt it was in his best interest to plead guilty, especially after his codefendant had decided to plead guilty and testify

against him. He said the petitioner's desire to plead guilty did not change after he talked to the petitioner about the one-hundred-percent service on the twenty-year terms. The attorney said that at the submission hearing, both the prosecutor and the trial court went over the terms of the plea agreement, including the one-hundred-percent service of the twenty-year terms. He said that although he advised the petitioner to accept the plea, it was the petitioner's decision. He said he did not force or coerce the petitioner to plead guilty.

The state introduced the transcript of the guilty plea hearing, at which the petitioner stated that he was thirty-one years old, had attended school through tenth grade, and could read and write without any problem. He agreed that he was pleading guilty freely and voluntarily and that no one was forcing him to plead guilty. He agreed that he had discussed his case thoroughly with his attorney and that they had gone over the paperwork relating to his guilty pleas. He acknowledged that he had no complaints about his attorney's representation and had no questions about his guilty pleas. Both the state and the trial court stated that the petitioner would be required to serve one hundred percent of his twenty-year sentences for especially aggravated kidnapping before becoming eligible for release. The prosecutor noted that the petitioner was arrested for another offense on February 21, 2001, which had resulted in his return to custody.

The trial court denied the post-conviction petition, finding that the petitioner was fully aware of the terms of the plea agreement and that his decision to plead guilty was free, voluntary, and without coercion from his attorney. It found no credible proof existed that the petitioner was misled in any way in entering the guilty pleas. It also found that the petitioner's trial attorney's representation met the standards established by Tennessee case law.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that his trial attorney failed to investigate his case or prepare for trial adequately. He argues that the attorney relied solely upon the discovery packet provided by the state and did not interview or subpoena witnesses. He asserts that his attorney did not hire an investigator or seek the assistance of expert witnesses. As evidence of the lack of investigation, he points to the fact that his attorney did not realize that he would have to serve his sentences for especially aggravated kidnapping at one hundred percent until the attorney learned it from the prosecutor. He summarily argues that his attorney filed no pretrial motions to suppress his statement to the police or to exclude his prior convictions. He maintains that his attorney did not discuss his case with him during the six months before his trial date or meet with him once he was in custody. Although he acknowledges that he missed several meetings with his attorney, he faults his attorney for not discussing the substance of his case with him during telephone conversations. He also argues that his attorney spent only four days preparing for his trial. He contends that the cumulative effect of these deficiencies creates a reasonable probability that the outcome of his case would have been different had his attorney rendered effective representation. The state contends that the attorney was not ineffective and that the petitioner freely, knowingly, and voluntarily pled guilty. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims that the ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

In order for a petitioner to succeed on a post-conviction claim, the petitioner must show the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they are mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. Tenn. Code Ann. § 40-30-203.

Initially, the state contends that the petitioner has failed to claim that his guilty plea was not freely, knowingly, and voluntarily entered or that his attorney was ineffective in the representation he gave with respect to the guilty plea. We agree that the thrust of the petitioner's brief is that his attorney was ineffective in his investigation of the petitioner's case and his preparation for trial. Nevertheless, in light of petitioner's testimony at the evidentiary hearing that he wanted to go to trial but was "badgered" into pleading guilty by his attorney's emphasis on his potential maximum sentence if convicted, we take the petitioner's claims to include a challenge to his guilty plea based upon his attorney's representation. In this respect, the law is well-settled that the choice between a trial that could result in harsh punishment upon conviction and a guilty plea involving a lesser punishment does not render the guilty plea involuntary. Hicks v. State, 983 S.W.2d 240, 248 (Tenn.

Crim. App. 1998); Parham v. State, 885 S.W.2d 375, 381 (Tenn. Crim. App. 1994); see also Bratton v. State, 477 S.W.2d 754, 757 (Tenn. Crim. App. 1971) (holding that "a guilty plea is not rendered involuntary by the fact that the accused is faced with an election between a possible death sentence on a plea of not guilty and a lesser sentence upon a guilty plea"). In fact, in order for a defendant to make "'a voluntary and intelligent choice among the alternative courses of action' available to him, counsel must advise the accused, among other things, of the choices that are available to him as well as the probable outcome of these choices." Parham, 885 S.W.2d at 384 (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct 160, 164 (1970)). If an attorney believes it to be in the defendant's best interest to plead guilty, the attorney should advise the defendant to do so. Id. In so advising, the attorney may use reasonable persuasion to convince the defendant to accept his or her advice. Id.

In the present case, the petitioner's trial attorney testified that he believed that the witnesses for the state would provide sufficient evidence to convict the petitioner, that the codefendant's testimony would hurt the petitioner's case, that he knew of no defense available to the petitioner, that the petitioner faced a substantial sentence upon conviction, and that it was in the petitioner's best interest to plead guilty. In light of his view of the strength of the evidence against the petitioner, the attorney was justified in advising the petitioner that he faced a substantial sentence upon conviction. Although the attorney testified that he initially told the petitioner the wrong release eligibility percentage for the especially aggravated kidnapping sentences, he told the petitioner the correct percentage while they were completing the paperwork before the submission hearing. The trial court accredited the attorney's testimony that he did not coerce the petitioner into pleading guilty and found that the petitioner was not misled about the terms of the guilty plea. The petitioner is not entitled to relief on this ground.

With regard to the petitioner's argument that his attorney did not adequately investigate his case or prepare for trial, the petitioner has failed to show by clear and convincing evidence that he would not have pled guilty if the investigation or preparation had been more extensive. A guilty plea based upon the reasonably competent advice of counsel may not be attacked because of the possibility that the eventual outcome of an issue may have been favorable to the petitioner had he or she proceeded to trial. McMann v. Richardson, 397 U.S. 768, 769-70, 90 S. Ct. 1114, 1448 (1970). The decision to plead guilty before all the issues are resolved necessarily involves the making of difficult choices based upon uncertain judgments and predictions. Id. Furthermore, a defendant's decision to plead guilty may rest upon factors that go beyond the legal issues involved in the case such as the reduction of stress on the defendant and his or her family, the removal of uncertain consequences arising from a trial, and the reduction of actual exposure. See, e.g., id. at 768-69, 90 S. Ct. at 1447. Thus, in order to prove the prejudice prong of Strickland, 466 U.S. at 687, 104 S. Ct. at 2064, the petitioner must establish that a reasonable probability exists that "but for counsel's errors," he would not have pled guilty but would have insisted on a trial. Hill, 474 U.S. at 59, 106 S. Ct. at 370. The petitioner testified that he decided to plead guilty because his attorney told him that he could not win his case and because of the lengthy sentence he faced if convicted at trial. He also testified that his family encouraged him to plead guilty and that he thought his family

knew what was best for him at the time of the guilty plea. The petitioner does not claim that his decision to plead guilty was influenced by the attorney's investigation or preparation for trial.

The petitioner has also failed to carry his burden of proof with regard to his claims that his attorney should have investigated certain witnesses, conducted additional discovery, and spent more time preparing for trial. Although the petitioner testified about witnesses who would have provided a defense at trial, he did not call Terry or Glen Hirvery or question Ms. Jones and his sister about his whereabouts on the day of the offenses at the evidentiary hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses . . . these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The petitioner's failure to present the testimony of witnesses that he claims should have been at his trial is fatal to his complaints regarding his attorney's investigation and failure to call witnesses. Moreover, the petitioner did not present any helpful information that his attorney could have discovered upon additional investigation, and he does not explain why the amount of time his attorney spent preparing for trial was insufficient. Finally, with regard to his claim that his attorney failed to file any pretrial motions, the petitioner's summary arguments regarding the filing of pretrial motions do not even suggest that this aspect of his defense had any bearing upon his decision to plead guilty. Given the trial attorney's testimony, the record justifies the trial court's conclusion that the attorney was not ineffective. The judgment of the trial court is affirmed.

Based upon the foregoing and the record as a whole, we affirm the trial court's denial of the post-conviction petition.

_____
JOSEPH M. TIPTON, JUDGE